751 A.2d 1089 (2000)
331 N.J. Super. 344
Andrew DALEY, Appellant,
v.
DEPARTMENT OF CORRECTIONS, Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted December 14, 1999.
Decided June 5, 2000.
*1090 Andrew Daley, appellant pro se.
John J. Farmer, Jr., Attorney General, for respondent (Mary C. Jacobson, Assistant Attorney General, of counsel; Elena R. Flynn, Deputy Attorney General, on the brief).
Before Judges WALLACE, Jr., CUFF and LESEMANN.
The opinion of the court was delivered by LESEMANN, J.A.D.
This appeal implicates due process guarantees as they apply to a prison disciplinary action which involved substantial adverse consequences to the inmate involved___fifteen days detention, 365 days administrative segregation and 365 days loss of commutation time.
While it is clear that the full panoply of Fourteenth Amendment due process guarantees do not apply to a prison disciplinary proceeding as they would to a non-prison criminal proceeding, such rights are abridged only "to the extent necessary to accommodate the institutional needs and objectives of prisons." McDonald v. Pinchak, 139 N.J. 188, 194, 652 A.2d 700 (1995). Under decisions of both the United States Supreme Court, see Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), and the even broader protections provided by the New Jersey Supreme Court, see McDonald v. Pinchak, supra; Avant v. Clifford, 67 N.J. 496, 341 A.2d 629 (1975), prison inmates remain entitled to certain basic due process protections. Unfortunately, the procedures followed here curtailed defendant's right to a fair hearing far beyond any restriction required by his prison environment and obviated one of the most basic aspects of any system of due process and fair treatment: a clear statement of the offense with which the accused is charged. Not only did the Department of Corrections (the Department) fail to provide a clear statement of the charge against appellant Daley (Daley), but in what it did provide, it misled and misinformed Daley and may well have made it impossible for him to defend the charge against him. For those reasons, we reverse and remand the matter to the Department for further proceedings.
On July 14, 1998, Senior Internal Affairs Investigator Wojciechowicz filed a disciplinary report charging Daley (an inmate at East Jersey State Prison) with planning an assault on a correction officer. The report, a copy of which was served on Daley, describes the charge against him as follows:
Based on information received in an ongoing investigation by the East Jersey State Prison (E.J.S.P.) Internal Affairs Unit (I.A.U.) it was learned that inmate Andrew Daley S.P. # 260940 engaged in the planning of an assault against an E.J.S.P. custody staff member (Lt. Pascucci).
That disciplinary report constituted the statement of charges against appellant. Daley pleaded not guilty to the charge and requested and was given a "counsel substitute" to represent him in the matter. Appellant insisted he had no idea who had made the charge against him, and he continued to assert his innocence. He was nevertheless placed in pre-hearing detention, the matter was investigated by Sergeant Vander Thompson of the Department, and a disciplinary hearing was scheduled for three days later, on July 17, 1998. The hearing was adjourned a number of times but was ultimately held on July 27, 1998.
At the hearing, the Department based its case almost entirely on the statement of a confidential informant (CI). A summary of the CI's statement was provided to Daley and his counsel substitute. It read in part as follows:

*1091 Subsequent to 6/13/98, I/M [Inmate] Daley was heard by a confidential informant to state that he was planning an assault on Lt. Pascucci at East Jersey State Prison.
This informant submitted to a polygraph and was found to be truthful regarding the relevant questions. I/M Daley was offered a polygraph and refused.
Appellant's counsel substitute had argued both before and at the hearing, that the CI's statement should not be used against appellant because it was "vague, ambiguous and not dated." He also asserted that it violated the requirements set out in Fisher v. Hundley, 240 N.J.Super. 156, 572 A.2d 1174 (App.Div.1990) because it failed to disclose where the remarks had been made and what the CI claimed appellant had said. Those objections, and further objections based on the adjournments of the hearing, were overruled and after the proceeding was concluded, the hearing officer found appellant guilty of the charge against him. The officer summed up the evidence of guilt as follows:
I/M stated he would assault Lt. Pascucci. Statement was made to a reliable informant who passed polygraph. Rep. [counsel substitute] objects to use of informants and to postponements. But evidence is sufficient to convince a reasonable person of inmate's guilt. Report and confidential material relied upon (additional confidential material is being held at IA, at E.J.S.P. [presumably East Jersey State Prison]___Exhibit C-2).
In what is apparently an addendum to the "Adjudication of Disciplinary Charge" rendered by the hearing officer, the officer annexed a one-page document entitled "Summary of Confidential Information." That document includes the following two paragraphs:
Subsequent to 6/13/98, I/M Daley was heard by a confidential informant to state that he was planning an assault on Lt. Pascucci at East Jersey State Prison.
This informant submitted to a polygraph and was found to be truthful regarding the relevant questions. I/M Daley was offered a polygraph and refused.
On July 29, 1998, Daley appealed the decision against him. The appeal document signed by his counsel substitute objected to use of the confidential summary report against him, asserting that,
[I]t lacked substance and it's more of a conclusion than a concise statement of facts based upon the informants personal knowledge. More importantly, the confidential summary failed to provide a specific time, place, or area of the prison the alleged statement was made by Daley.
The document continued by claiming that the allegations against Daley were "vague, general, and un-corroborated by any other evidence whatsoever." See Fisher v. Hundley, 240 N.J.Super. at 158, 572 A.2d 1174 (1990). On August 18, 1998, the Department affirmed the decision of the hearing officer, concluding that, "There was compliance with the Department of Corrections Standards on inmate discipline which prescribes procedural safeguards. The decision of the Hearing Officer was based upon substantial evidence."
The Department is not required to provide a taped record or stenographic transcript of disciplinary proceedings. See McDonald v. Pinchak, supra, 139 N.J. at 201-02, 652 A.2d 700. The Department did not do so here, and thus we have no clear record of precisely what was said at the disciplinary hearing. However, in his brief, appellant includes the following statement:
A review of this case will reveal that the only information provided by the informant implicating appellant is the statement "that Pascucci, if I ever get out, I'll get him. If I don't, I'll get someone else to do it."
Apparently, at some point during or before the hearing, a Department representative *1092 or the hearing officer quoted that statement as representing the CI's allegation of what appellant had threatened to do to Lt. Pascucci. That conclusion is consistent with a statement in the Attorney General's brief, on behalf of the Department, that,
Appellant concedes in his own brief that the confidential informant claims to have heard appellant state, "that Pascucci, if I ever get out, I'll get him. If I don't, I'll get someone else to do it."
From the foregoing, one would conclude that Daley is alleged to have made the quoted statement concerning Pascucci and that the statement wasnot unreasonablyviewed as a threat against Lt. Pascucci. However, an examination of the Confidential Appendix provided to us by the Department reveals a totally different scenario.
The Confidential Appendix begins with a report of Investigator Wojciechowicz involving three inmates: appellant Andrew Daley (sometimes referred to as "Drew"), Michael Campbell and Kevin Simon. Although neither the Confidential Appendix nor the other documents submitted are completely clear on the point, Campbell and Simon seem to have been charged with the same offense as Daley and all were found guilty. The report from Investigator Wojciechowicz begins with the statement of a CI who quotes Campbell (not Daley) as saying, "that Pascucci, if I ever get out I'll get him, if I don't I'll get someone else to do it." The CI also notes that Campbell was angry with Pascucci because Pascucci had caused the arrest of a civilian visitor to the prison, Donna Mullings, who was apprehended while attempting to smuggle drugs to Campbell. The CI also said that immediately after Campbell made his threatening remark about Pascucci, another inmate, whom the CI could not identify, responded, "Yeah, that's what someone needs to do." That second inmate was never identified and there is no suggestion that it was Daley.
Daley appears in Wojciechowicz's report only with respect to a report by a CI (apparently a different CI than the one originally mentioned) who described a conversation between Daley and another inmate. In that conversation, the second CI says he heard Daley say that, "He (Drew) ain't doing or orchestrating nothing until he gets what he supposed to get from Mike (Campbell)." Apparently, Wojciechowicz asked the CI if he understood what "Drew" and the other inmate were supposed to get from Campbell, and the CI replied that each was supposed to get two ounces of marijuana.[1]
So far as appears, neither any representative of the Department nor the hearing officer ever made clear to appellant that it was Campbell (not Daley) who allegedly spoke of getting Pascucci or employing someone else to do so. Nor did anyone tell Daley what the CI claimed to have heard Daley say. All indications had been that the statement, which apparently came from Campbell, was said to have come from Daley, and it was that statement to which Daley (understandably) directed his defense.
As noted, a prison inmate may have his due process rights "abridged to the extent necessary to accommodate the institutional needs and objectives of prisons." McDonald v. Pinchak, supra, 139 N.J. at 194, 652 A.2d 700. However, imprisonment does not mean that an inmate is bereft of constitutional rights or that he may be arbitrarily subjected to "grievous loss" without regard for due process.
*1093 Avant v. Clifford, supra, 67 N.J. at 519, 341 A.2d 629.[2]
In Avant, the Court itemized and discussed sequentially the critical due process guarantees which must be afforded an inmate facing "grievous loss."[3] The first such requirement is "notice." As the Court said in Avant, both the holdings of the United States Supreme Court, see, e.g., Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), and the standards adopted by the Department itself require "that written notice ... be given to the disciplinary action defendant in order to inform him of the charges and to enable him to marshal the facts and prepare a defense." Avant, supra, 67 N.J. at 525, 341 A.2d 629; see also Fisher v. Hundley, supra, 240 N.J.Super. at 158, 572 A.2d 1174, (referring to the "Kafkaesque predicament of having to defend against evidence that was totally undisclosed"). In Fisher, this court reversed and remanded a disciplinary conviction in part because the vague notice to the appellant had misled him as to the actual charge against him.
That basic notice requirement, essential if an accused is to have a reasonable opportunity to meet and defend against a charge, must specify as precisely as reasonably possible, just what the accused is said to have done. The requirement is explicitly recognized in the New Jersey Administrative Code, N.J.A.C. 10A:4-9.15(b)1ii, which provides that when the charge against the accused is based on the accusation of a CI, the accused is entitled to have "[T]he informant's statement... in language that is factual rather than a conclusion,...."
Here, that principle was clearly violated. We can see no reason why the charge against Daley could not have set out the language he is said to have used. Instead, he was charged with "planning of an assault" against Lt. Pascucci, and he was told the CI had heard him say, "he was planning an assault" on Lt. Pascucci. To the extent that he was given more precise information, the information was misleading and inaccurate. While he was told the CI had heard him say, "That Pascucci, if I ever get out, I'll get him. If I don't, I'll get someone else to do it," in fact the CI quoted Daley as saying only that he was not going to do anything until he got what he apparently wanted.
That comment (on which the Department's entire case against Daley seems to be based) is, at best, ambiguous. The Department apparently contends that the words used represented an implicit or explicit expression of willingness to participate in a plot against Pascucci. But that is obviously a conclusion; it is not a "factual" statement of what appellant is alleged to have said.
It may be that on proper notice to appellant, and after giving him a reasonable opportunity to meet the charge, the Department can prove its case and show that Daley's words did indeed demonstrate his participation in the plot charged. But that is not a foregone conclusion. Daley must *1094 be given an opportunity to argue or show the contrary. To exercise that right, he must be told what it is he is supposed to have said. Then, he may claim that he never made the statement, or he may acknowledge that he made the statement but argue that it does not mean what the Department says it means. He may also have some other explanation or defense. Whatever the case, he must be given a factual statement of what he is charged withand not merely a broad allegation in conclusory languageand he must be given an opportunity to meet that charge. The Constitution and the controlling decisions of the courts of this State and the United States require nothing less.
The matter is reversed and remanded to the Department for further proceedings consistent with this opinion.
NOTES
[1] The other inmate to whom Daley is said to have made these remarks was identified as Simon, who was also charged (with Campbell and Daley) with planning an attack on Pascucci.

In a later portion of the Confidential Appendix, questions presented to the CI during a polygraph examination include one quoting Daley as saying, "me not going to orchestrate nothing until Mike give me the ganja."
[2] Neither the court's discussion in Avant, nor our discussion here concerns "disciplinary response to minor infractions, sometimes called `On-the-Spot-Correction' involving slight punishment such as verbal reprimand, temporary withdrawal of privileges or brief confinement to tier...." As the Court stated in Avant "[w]e deal rather with disciplinary matters which may subject an individual to `grievous loss' by way of punishment for serious misconduct. It is the prospect of such `grievous loss' which quickens the right to constitutional due process by way of procedural protections." Id. at 518-19, 341 A.2d 629. Daley's sentence to a loss of 365 days commutation time would certainly constitute "grievous loss," and the Department does not argue the contrary.
[3] Avant noted that in addition to minimal constitutional protections, the New Jersey Supreme Court also has broad supervisory review authority over administrative agencies such as the Department and has extended protections beyond "naked constitutional right" in order to "insure procedural fairness in the administrative process." Id. at 520, 341 A.2d 629.