819 A.2d 1 (2003)
359 N.J. Super. 70
Daymon JONES, Defendant-Appellant,
v.
DEPARTMENT OF CORRECTIONS, Respondent-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted January 29, 2003.
Decided March 24, 2003.
*2 Daymon Jones, appellant pro se.
David Samson, Attorney General, attorney for respondent (Patrick DeAlmeida, Deputy Attorney General, of counsel; Victoria L. Kuhn, Deputy Attorney General, on the brief).
Before Judges KESTIN, FALL and WEISSBARD.
The opinion of the court was delivered by KESTIN, P.J.A.D.
On November 11, 2001, Daymon Jones, an inmate at Southern State Prison, became the object of institutional disciplinary charges alleging that he had threatened Correctional Officer Panichelli with bodily harm "or with any offense against his or her person or his or her property" in violation of N.J.A.C. 10A:4-4.1(a)*.005. When the charge was investigated, Jones denied the allegations, stating: "It's all a fabrication. I never threatened him."
The required disciplinary hearing was convened on November 13, but was postponed when Jones invoked his right to confront and cross-examine his accuser, Panichelli, as well as his need for a witness statement from another correctional officer, Tyson, who, Jones asserted, had been an eyewitness to the incident. The hearing reconvened two days later, on November 15, but was postponed again, pending compliance with the hearing officer's requirement *3 that Jones submit written confrontation questions for Panichelli. When the matter reconvened on November 16, it was postponed further, pending receipt of Panichelli's written responses to the questions submitted by Jones.
The merits of the matter were addressed on November 19. The hearing officer reviewed the written disciplinary charge that Panichelli had filed. The specifications alleged that, during a routine search of Jones's locker, Panichelli had found a tape dispenser and pink highlighter, which he "seized as contraband." The written form went on to allege that Jones responded with an epithet and a threat of physical violence the next time Panichelli examined his locker. The charge also specified that Jones, about three feet away from Panichelli, raised his fists toward the officer's face. In addition to the written charge, the hearing officer also reviewed two reports bearing upon the "contraband," two others dealing with preliminary procedures, two "escort reports," and a report from the prison nurse.
Jones presented a defense with the assistance of a "counsel substitute." Jones testified to a different version of events than Panichelli had reported. He argued, as well, that the various reports and statements considered by the hearing officer were inconsistent, and that Panichelli had filed a false report. The record and the hearing officer's "adjudication of disciplinary charge" disclose that the evidence Jones sought to elicit from Panichelli was presented in the form of written questions and answers, and that the evidence from Tyson was in the form of a written statement.
Relying on this evidentiary record, the hearing officer sustained the charge. She determined specifically that Panichelli's report was credible and that there "was no reason for [him] to fabricate [the] charge." The hearing officer recommended a sanction of detention for fifteen days with credit for time served, 180 days of administrative segregation, and loss of 180 days of commutation time. On internal review, the administrative segregation sanction was modified with a suspension of sixty days of the time initially ordered.
On appeal, Jones raises a single issue: that he "should have been afforded the opportunity to confront and cross-examine [the] officer filing a charge against him, and an opportunity to question the witness for him." He argues that when face-to-face confrontation and cross-examination were denied, he "wasn't able to fully defend himself." The Department of Corrections (Department) argues in response that the hearing officer's decision should be affirmed because the procedure employed "comported with all procedural due process requirements and the finding of guilt is supported by substantial, credible evidence." We reject the Department's argument and reverse, remanding for a new hearing that reflects recognition of Jones's due process right to confrontation and cross-examination, and of his litigation right to witness access.
Where a party's opportunity to develop and present evidence supporting his challenge to charges filed against him has been unduly curtailed, there can be no determination that the requirements of the substantial evidence rule have been satisfied. Application of the substantial evidence rule presupposes an adequate opportunity by the party against whom a decision has been rendered to have marshalled and offered evidence.
With allowances for the special rule that due process rights in prison disciplinary proceedings may be tailored to meet the needs of the institutional context in which such proceedings arise, prison inmates may not be deprived of basic due process protections. See Avant v. Clifford, 67 N.J. 496, 525, 341 A.2d 629 (1975)(citing *4 Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)).
The opportunities to confront one's accusers and cross-examine them, and to develop one's own proofs, are basic protections in our system of adjudication, Chambers v. Mississippi, 410 U.S. 284, 294, 93 S.Ct. 1038, 1045, 35 L.Ed.2d 297, 308 (1973), especially in matters with penal qualities, State v. P.H., 353 N.J.Super. 527, 537, 803 A.2d 661 (App.Div.2002), and specifically in prison inmate disciplinary proceedings. See McDonald v. Pinchak, 139 N.J. 188, 196-99, 652 A.2d 700 (1995); N.J.A.C. 10A:4-9.13(a), -9.14(a). Although such basic rights may be waived, or limited in prison inmate disciplinary matters as compelling considerations of the specific case or legitimate institutional needs may suggest, they cannot be denied or limited in any way that dilutes them to the vanishing point. See Wakefield v. Pinchak, 289 N.J.Super. 566, 571-72, 674 A.2d 621 (App. Div.1996), certif. denied, 165 N.J. 677, 762 A.2d 658 (2000).
The purpose of the confrontation right is to guarantee "a meaningful opportunity to present a complete defense." State v. Budis, 125 N.J. 519, 531, 593 A.2d 784 (1991)(quoting Crane v. Kentucky, 476 U.S. 683, 690, 106 S.Ct. 2142, 2146, 90 L.Ed.2d 636, 645 (1986)). Likewise, the correlative right of cross-examination is designed to afford a party the opportunity to "face [his] accusers[] and to cross-examine the State's witnesses." Budis, supra, 125 N.J. at 530-31, 593 A.2d 784 (quoting Pennsylvania v. Ritchie, 480 U.S. 39, 51, 107 S.Ct. 989, 998, 94 L.Ed.2d 40, 53 (1987)). And further, testimonial access to witnesses in the control of the opposing side, is a basic litigation right. See State v. Varona, 242 N.J.Super. 474, 485, 577 A.2d 524 (App.Div.), certif. denied, 122 N.J. 386, 585 A.2d 389 (1990)(citing Pennsylvania v. Ritchie, supra, 480 U.S. at 56, 107 S.Ct. at 1001, 94 L.Ed.2d at 56-57).
When Jones was denied in-person confrontation and cross-examination in respect of Panichelli, his accuser, he was deprived of the fundamental opportunity to develop his defense by revealing the weaknesses in the accusation against him either on the basis of the accuser's credibility or otherwise. The hearing officer's decision was based on a credibility finding favorable to Panichelli. It was a determination that could not be fairly reached without affording Jones the opportunity to address the credibility issue effectively. See Avant, supra, 67 N.J. at 530, 341 A.2d 629. And, the hearing examiner failed to make the findings mandated by rule before that right could be curtailed. See N.J.A.C. 10A:4-9.14(b) (requiring, as a prerequisite to denying confrontation and cross-examination, a finding that the exercise of these rights "would be unduly hazardous to correctional facility safety or goals").
As a general matter in our system of adjudication, in-person confrontation and cross-examination have traditionally been regarded as the best ways to test credibility. Miller v. Henderson, 41 N.J.Super. 15, 25, 124 A.2d 23 (App.Div.), certif. denied, 22 N.J. 229, 125 A.2d 441 (1956). We have previously applied that principle to inmate disciplinary proceedings, see Decker v. Department of Corrections, 331 N.J.Super. 353, 359-60, 751 A.2d 1094 (App.Div.2000), and we now reaffirm that view. See also Daley v. Department of Corrections, 331 N.J.Super. 344, 751 A.2d 1089 (App.Div.2000). Nothing substitutes for the trier of fact's opportunity, in measuring truth or falsity, to view the witness's demeanor in presenting his allegations. See State v. Smith, 158 N.J. 376, 385, 730 A.2d 311 (1999)(citing Maryland v. Craig, 497 U.S. 836, 846, 110 S.Ct. 3157, 3163, 111 L.Ed.2d 666, 678 (1990)).
Moreover, when Jones was denied access to the testimony of an alleged *5 eyewitness, Tyson, for the purpose of probing the accuracy of the charge, he was denied what every litigant is due. Here also, the hearing examiner failed to meet the requirements of governing regulations in denying that litigation right. See N.J.A.C. 10A:4-9.13(a) (also requiring a finding that exercise of the opportunity "to call witnesses and present documentary evidence ... will not be unduly hazardous to correctional facility safety or goals," and a specific statement of "the reasons for each such refusal ... on the Adjudication of Disciplinary Report form"); See also McDonald, supra, 139 N.J. at 196-97, 652 A.2d 700. To the extent the "evidence" from Tyson, i.e., his written statement, informed the findings and conclusion reached by the hearing examiner, those determinations are flawed. This is not to say that a hearing officer in a prison disciplinary proceeding may not rely on written reports in support of other evidence properly admitted. The residuum rule permits such use in administrative proceedings, see N.J.A.C. 1:1-15.5(b), with the inherent reservation that some legally admissible evidence must be at the basis of every finding. See Weston v. State, 60 N.J. 36, 51, 286 A.2d 43 (1972). Nevertheless, where an inmate seeks access to an eyewitness in a reasonable attempt to rebut the charge made against him, that effort must be indulged. See McDonald, supra, 139 N.J. at 196-97, 652 A.2d 700.
We have previously held that inmates in prison disciplinary proceedings, like other litigants, are entitled to "a fair opportunity to prepare a defense," Wakefield, supra, 289 N.J.Super. at 571, 674 A.2d 621 (citing Wolff and Avant), and that every inmate has an enforceable "interest[] in a fair hearing," id. at 574, 674 A.2d 621 (citing Avant). We discern no basis rooted in the special needs of this inmate's situation or any recognizable interests of the prison's authorities, and certainly none grounded on general principles, for considering this case to embody an exception to fundamental due process requirements and litigation standards applying to all. See id. at 570, 574, 674 A.2d 621. The hearing examiner provided no basis, as required by N.J.A.C. 10A:4-9.13 and 9.14, for any such conclusion. A proceeding in which the right of confrontation and cross-examination has been unduly curtailed, or the accused unreasonably limited in his access to witnesses in his favor, lacks both the form and substance of a fair hearing.
The Department's inability to comply with its due process obligations as specifically defined by Avant, McDonald, Wakefield, Daley, Decker, and other cases is distressing. If that shortcoming is unremedied in the future, the result may come to be outright reversal of the matters at hand without any provision for remand for new hearings. We will not mandate so draconian a remedy at this time, however.
Reversed and remanded.