**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1181-18T1

MICHELLE LOVE,

      Appellant,

v.

BOARD OF REVIEW,
DEPARTMENT OF
LABOR, and EMPIRE
INTERNATIONAL, LTD.,

      Respondents.

_____

Submitted November 4, 2019 – Decided November 26, 2019

Before Judges Ostrer and Vernoia.

On appeal from the Board of Review, Department of Labor, Docket No. 155,089.

Michelle Love, appellant pro se.

Gurbir S. Grewal, Attorney General, attorney for respondent Board of Review (Donna Arons, Assistant Attorney General, of counsel; Alexis F. Fedorchak, Deputy Attorney General, on the brief).

Respondent Empire International, LTD., has not filed a brief.

PER CURIAM

Claimant Michelle Love appeals from a Board of Review final agency decision disqualifying her from unemployment compensation benefits because she voluntarily resigned her employment as a customer care representative with Empire International, Ltd. without good cause attributable to the work. Based on our review of the record in light of the applicable legal principles, we vacate the Board's decision and remand for further proceedings.

I.

Claimant commenced her employment as a customer care representative with Empire in May 2017. Following the termination of her employment one year later, she filed a claim for unemployment benefits in June 2018. A Division of Unemployment Compensation deputy determined claimant was disqualified from benefits from May 20, 2018, through July 14, 2018, because she was discharged on May 21, 2018, for simple misconduct connected to the work by violating a company rule.

Claimant appealed. The notice of the hearing before the Appeal Tribunal stated that the issue to be determined was whether claimant was terminated for misconduct and severe misconduct, but Empire's position at the hearing was that

2

claimant was disqualified from benefits because she voluntarily resigned without good cause attributable to the work. The hearing examiner noted that claimant had not been provided notice of that issue prior to the hearing and offered claimant's counsel the opportunity to adjourn the hearing, but counsel waived claimant's "right to written notice for voluntarily leaving" and agreed to proceed with the hearing.

With the change of the hearing issue from whether claimant was terminated for misconduct to whether she voluntarily resigned for good cause not attributable to the work, the evidence presented centered on the circumstances surrounding the May 21, 2018 termination of claimant's employment. Empire's director of operations, Jeanine Simonson, testified that in March 2018, claimant was written up because a review of recorded communications between claimant and Empire's customers revealed communications claimant did not "handle[] well" and also claimant's "erroneous[]" award of "credits and things" to customers. Simonson testified that in March 2018, Empire instituted a performance improvement plan for claimant; claimant was advised that if her performance did not improve, further disciplinary action up to termination could occur; and claimant received a written warning to that effect.

A-1181-18T1

Simonson also explained that claimant's performance improved, and that two months later, on May 21, 2018, the company offered to increase claimant's wages one dollar per hour. According to Simonson, claimant said the increase was insufficient, she had another job, and she was going to have to quit because the job with Empire did not pay enough. According to Simonson, she told claimant, "I guess you have to do . . . what you have to do" and accepted claimant's resignation. Simonson testified that claimant's later assertion "that she didn't quit is totally untrue."

On May 21, 2018, claimant submitted a detailed letter to Empire's chief executive officer, David Seelinger, describing her employment history with the company, the reduction and turnover of staff in her department, and her dissatisfaction with the amount and payment of her wages. Claimant noted that in September 2017, she complained about a co-employee who "continually left work early, showed up late, or took numerous days off," and that, after the employee was informed of her complaint, there "was unnecessary and unprofessional drama and tension within the team." She also stated that in March 2018, she was shocked to be placed on a performance improvement plan, and that in May she was informed she "perfect[ed] all [of her] skills . . .

and . . . made outstanding progress." Claimant also declared that she "will be putting in . . . two week[s'] notice due to the ongoing struggles."

In the hours following receipt of claimant's letter, Simonson and Belle Riskin, Empire's Director of Human Resources, spoke to claimant on the telephone. Simonson could not recall all that was said during the conversation. Simonson denied claimant was told her employment was being involuntarily terminated and recalled she and Riskin accepted claimant's resignation. Simonson acknowledged the phone call was recorded and Empire had the recording. Empire paid claimant through June 1, 2018.

Claimant disputed Simonson's testimony concerning the phone call. Claimant testified that after she sent the May 21, 2018 letter, Riskin and Simonson called and advised her she was "terminated effective immediately." Claimant also asserted she sent the May 21 letter to complain that Empire had not paid her as required by law for time she had been required to be available "on call" to address customer issues. Following the termination of her employment, claimant filed a claim concerning the on-call pay issue with the New Jersey Department of Wage and Hour Compliance. Claimant testified she raised the on-call pay issue with Simonson and Seelinger in the months prior to

5

the termination of her employment and in May 2018 told them she "would have to resign" if the issue was not resolved.

Claimant denied resigning on May 21, 2018, and testified she told Simonson, and later Seelinger in the May 21 letter, that she was thinking about resigning, but would put her resignation in writing. She explained that she never submitted a written resignation, and that she wrote to Seelinger a second time clarifying she did not resign in her May 21 letter, "didn't want to resign," and "wanted to still work for the company." Claimant denied telling Simonson she had another job and testified that after she sent the May 21 letter, Simonson and Riskin called her and said she was terminated "effective immediately" but would be paid for two weeks.

In its written decision, the Appeal Tribunal determined the evidence did not establish claimant expressed a "future intention" to resign, but rather established claimant "initiated the separation both verbally and in writing" on May 21, 2018. The Appeal Tribunal found claimant was placed on a performance improvement plan, agreed to the plan, and was subsequently told her performance improved. The Appeal Tribunal noted that claimant was offered a one dollar per hour wage raise, but did not accept it. The Appeal Tribunal also found that claimant told her manager, Simonson, that she had

another job and would be leaving her employment, and that claimant sent the letter to Seelinger advising she was submitting her two weeks' notice due to ongoing struggles at Empire. The Appeal Tribunal concluded that claimant left work voluntarily and that her reason for resigning—ongoing struggles at Empire—did not constitute good cause attributable to the work. The Appeal Tribunal disqualified claimant for benefits as of May 20, 2018, in accordance with N.J.S.A. 43:21-5(a).[1]

Claimant appealed. In her pro se letter to the Board in support of her appeal, claimant argued the evidence did not support the Appeal Tribunal's findings, the findings were erroneous, the Appeal Tribunal did not consider if her purported resignation was for good cause attributable to the work, and the Appeal Tribunal erred by failing to issue a subpoena for the audio recording of the May 21, 2018 telephone call during which Simonson and Riskin allegedly involuntarily terminated her employment. Claimant noted that her counsel requested the subpoena prior to the hearing and during the hearing, and that Empire's failure to produce the recording of the telephone call undermined its contention that she resigned.

---

[1] The Appeal Tribunal also rejected the deputy's determination claimant was disqualified because she was discharged for simple misconduct connected to the work. See N.J.S.A. 43:21-5(b).

In its decision, the Board did not address claimant's argument concerning the requests for the subpoena for the recording. The Board's decision reflects only that it reviewed the record and affirmed the Appeal Tribunal's decision. This appeal followed.

## II.

Our scope of review of an agency decision is limited. In re Stallworth, 208 N.J. 182, 194 (2011) (citing Henry v. Rahway State Prison, 81 N.J. 571, 579 (1980)). In challenging an agency conclusion, the claimant carries a substantial burden of persuasion, and the determination of the administrative agency carries a presumption of correctness. Gloucester Cty. Welfare Bd. v. N.J. Civ. Serv. Comm'n, 93 N.J. 384, 390-91 (1983).

We are also "obliged to defer to the Board when its factual findings are based on sufficient credible evidence in the record." Lourdes Med. Ctr. v. Bd. of Review, 197 N.J. 339, 367 (2009) (internal quotation marks and citations omitted). Indeed, "[w]e are not permitted to review the case as though we were the original factfinder and substitute our judgment for any disagreements we might have with the Board." Ibid. "Rather, we must determine whether the Board could reasonably have reached its conclusion based on the proofs." Ibid.

A court may properly intervene if an agency's action was arbitrary, capricious or unreasonable, or was "'clearly inconsistent with its statutory mission or with other State policy.'" Brady v. Bd. of Review, 152 N.J. 197, 210 (1997) (quoting George Harms Constr. Co. v. N.J. Tpk. Auth., 137 N.J. 8, 27 (1994)). Judicial review, however, is confined to determining, first, whether the agency decision offends the State or Federal Constitution; second, whether it violates legislative policies; third, whether the record contains substantial evidence to support the agency decision; and, fourth, whether the agency, in applying legislative policies to the facts, clearly erred in reaching a conclusion that could not reasonably have been made. Id. at 211; see also Barry v. Arrow Pontiac, Inc., 100 N.J. 57, 71 (1985) (explaining that agency determinations are reversed only if arbitrary, capricious, unreasonable, unsupported by substantial credible evidence as a whole, or inconsistent with the enabling statute or legislative policy).

Our consideration of a Board's final decision is also guided by the fundamental principles governing unemployment compensation. The unemployment compensation law, N.J.S.A. 43:21-1 to -71, is designed to reduce the impact of unemployment for workers who, without fault, become unemployed. Brady, 152 N.J. at 212. The policy underlying the law is the

provision of "protection against the hazards of economic insecurity due to involuntary unemployment." Yardville Supply Co. v. Bd. of Review, 114 N.J. 371, 374 (1989); see also N.J.S.A. 43:21-2 (declaring it the public policy "to lighten [the] burden which . . . so often falls with crushing force upon" a worker and his or her family who is subject to "[i]nvoluntary unemployment").

The unemployment compensation law disqualifies a person from receiving unemployment benefits if he or she "left work voluntarily without good cause attributable to such work." N.J.S.A. 43:21-5(a). The phrase "good cause attributable to such work" is defined as "a reason related directly to the individual's employment, which was so compelling as to give the individual no choice but to leave the employment." N.J.A.C. 12:17-9.1(b). "The test of 'ordinary common sense and prudence' must be utilized to determine whether an employee's decision to leave work constitutes good cause." Brady, 152 N.J. at 214 (quoting Zielenski v. Bd. of Review, 85 N.J. Super. 46, 52 (App. Div. 1964)). The employee bears the burden of proof to establish good cause. Id. at 218; N.J.A.C. 12:17-9.1(c).

N.J.S.A. 43:21-5(a) "protects not only workers who are involuntarily unemployed—those who are laid-off or terminated from their jobs by their employers—but also those who voluntarily quit their jobs for good cause

attributable to their work." Utley v. Bd. of Review, 194 N.J. 534, 543-44 (2008). Because an employee "has the 'responsibility to do whatever is necessary and reasonable in order to remain employed,'" Brady, 152 N.J. at 124 (quoting Heulitt v. Bd. of Review, 300 N.J. Super. 407, 414 (App. Div. 1997)), a decision to quit "'must be compelled by real, substantial and reasonable circumstances not imaginary, trifling and whimsical ones,'" ibid. (quoting Domenico v. Bd. of Review, 192 N.J. Super. 284, 288 (App. Div. 1983)).

Consistent with the foregoing principles, the Board contends there is substantial credible evidence supporting its determination that claimant resigned her employment without good cause attributable to the work, and that we are therefore obligated to defer to those findings and affirm. "Application of the substantial evidence rule presupposes an adequate opportunity by the party against whom a decision has been rendered to have marshalled and offered evidence." Jones v. Dep't of Corr., 359 N.J. Super. 70, 75 (App. Div. 2003)." The Board ignores claimant's contention that the factual findings supporting its decision are the product of the Appeal Tribunal and Board's arbitrary, capricious, and unreasonable denial of her requests for the issuance of a subpoena for crucial evidence: the recording of the May 21, 2018 telephone call

between claimant, Simonson, and Riskin that followed claimant's letter to Seelinger.

Claimant argues she did not resign from her employment at Empire, but instead was involuntarily terminated by Simonson and Riskin during the telephone call. She contends that dispositive evidence she was involuntarily terminated lies in the recording. Simonson testified she could not recall all that was said during the call other than claimant was told her resignation was accepted, and they never told claimant she was involuntarily terminated. In her appeal to the Board, claimant requested that it issue a subpoena for the recording because "it is the best existing evidence of whether [she] was terminated or not, and it would easily clarify and provide incontrovertible evidence" that she was involuntarily terminated and did not quit.[2]

Claimant contends it was error for the Appeal Tribunal in the first instance, and the Board on her appeal from the Appeal Tribunal's decision, to deny her requests for a subpoena for the recording and decide the matter without the benefit of the recording. N.J.A.C. 1:12-11.1 provides for the issuance of

---

[2] Claimant's August 12, 2018 letter to the Board appealing the Appeal Tribunal's decision includes other arguments and requests. The Board's actions or inaction regarding those other arguments and requests are not challenged on appeal. We therefore do not address them.

A-1181-18T1

subpoenas by the Appeal Tribunal for the production of witnesses and records "in cases appealed to an [A]ppeal [T]ribunal," and also permits the Board to issue subpoenas on appeals from Appeal Tribunal decisions. To obtain a subpoena, the party applying for the subpoena must make a "showing of the necessity therefor." N.J.A.C. 1:12-11.1.

Claimant's counsel demonstrated the necessity for the subpoena for the recording of the May 21, 2018 telephone conversation in her July 30, 2018 prehearing letter to the Appeal Tribunal and again during the hearing itself. In her letter requesting the subpoena prior to the hearing, claimant's counsel explained the notice of hearing stated claimant was disqualified for misconduct and that claimant was never advised of any misconduct. Counsel sought the subpoena of the May 21, 2018 audio recording of claimant's termination "to substantiate the employer's position so that [claimant's counsel could] prepare in advance of the hearing." Neither the Board nor Empire objected to the request, and counsel's representations were sufficient to warrant issuance of the subpoena.[3] The record does not offer any basis supporting the Appeal Tribunal's failure to address, act upon or grant the request.

---

[3] In a July 26, 2018 prehearing submission to the Appeal Tribunal on claimant's behalf, her counsel noted her prior request for the issuance of a subpoena for the

(continued)

Moreover, during the hearing, when the issue of whether claimant resigned or was involuntarily terminated first became the primary issue to be decided, the recorded telephone call gained more importance and counsel noted the Appeal Tribunal's failure to issue the requested subpoena before the hearing. Counsel also requested on two occasions that the hearing record remain open to allow the recording to be subpoenaed "if there [was] any question whether or not [claimant] was terminated as opposed to voluntarily quit." The Appeal Tribunal did not deny the requests, but never expressly ruled on them. There was no post-hearing opportunity to subpoena the recording because the Appeal Tribunal's decision was issued and mailed on the same day as the hearing.

In her letter to the Board challenging the Appeal Tribunal's decision, claimant explained that during the hearing the issue of whether she quit or was involuntarily terminated became the centerpiece of her disqualification. Claimant asserted that production and review of the recording by the Board was therefore essential because the recording memorialized the actual termination of her employment, would confirm her version of the events, and would contradict Simonson's testimony and Empire's version of her termination.

audio recording of the telephone call, and that the subpoena had not been received.

Claimant satisfied N.J.A.C. 1:12-11.1's standard for the issuance of a subpoena for the recording in matters on appeal before the Board. Appeals to the Board "may be heard upon the evidence in the record made before the [A]ppeal [T]ribunal," but the Board "may direct the taking of additional evidence before it," N.J.A.C. 1:12-14.3(a), if in the Board's discretion "additional evidence is necessary to enable it to determine the appeal," N.J.A.C. 1:12-14.3(b). In its discretion, the Board may also "remand any claim or any issue involved in a claim to an [A]ppeal [T]ribunal for the taking of such additional evidence as the Board . . . may deem necessary." N.J.A.C. 1:12-14.3(c).

In its final decision, the Board did not address claimant's arguments concerning the subpoenaed recording or her request that the Board issue a subpoena for the recording on claimant's appeal. The Board offered no findings or reasoning supporting its apparent decision to ignore claimant's subpoena request and to reject claimant's assertion that it was error for the Appeal Tribunal not to issue the subpoena when it was first requested and when it was requested during the hearing. See generally Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002) (finding an abuse of discretion where a decision is made "without a rational explanation"). In its brief on appeal to this court, the Board similarly

ignores these issues and offers no argument disputing claimant's contention that the Appeal Tribunal's and Board's failures to issue the subpoena for the recording constitute errors requiring a reversal of the disqualification decisions.

Claimant was entitled to obtain and present evidence supporting her eligibility for unemployment compensation benefits, and she properly attempted to do so here with her requests for the issuance of a subpoena of the audio recording. To be sure, counsel could have interposed an objection at the commencement of the hearing, requested an adjournment, or more directly reprised the request for the subpoena during the hearing. Nonetheless, the requests were made before and during the hearing, and on the appeal to the Board, and the record is bereft of evidence supporting a proper denial of the requests or excusing the Appeal Tribunal's and Board's inexplicable failures to address, respond, or rule on the requests. The recording, which Simonson testified was made and exists, constitutes essential and perhaps dispositive evidence of whether claimant resigned or was involuntarily terminated. That issue is at the core of the determination of claimant's disqualification from benefits under N.J.S.A. 43:21-5(a).

We vacate the Board's decision and remand for the issuance of the subpoena for the recording of the May 21, 2018 telephone call between claimant,

16

Simonson, and Riskin. The Board, through the Appeal Tribunal or otherwise, shall reopen the record; consider the recording, the prior record, and such other evidence that may be introduced; and determine claimant's eligibility for unemployment compensation benefits. We do not offer any opinion on the merits of claimant's entitlement to benefits or disqualification from benefits. Those issues shall be decided anew on remand.

Vacated and remanded for further proceedings in accordance with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION