**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5073-18

WALLACE GASKINS,

    Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS,

    Respondent.

_____

Submitted February 3, 2021 – Decided March 24, 2021

Before Judges Whipple and Rose.

On appeal from the New Jersey Department of Corrections.

Wallace Gaskins, appellant pro se.

Gurbir S. Grewal, Attorney General, attorney for respondent (Jane C. Schuster, Assistant Attorney General, of counsel; Kimberly G. Williams, Deputy Attorney General, on the brief).

PER CURIAM

Wallace Gaskins, pro se, an inmate at New Jersey State Prison (NJSP) in Trenton, appeals from a June 12, 2019, final decision of the New Jersey Department of Corrections (DOC). An Assistant Superintendent upheld a disciplinary officer's decision finding Gaskins guilty of offense *.002, assaulting any person, N.J.A.C. 10A:4-4.1(a)(1)(ii); *.306, conduct which disrupts or interferes with the security or orderly running of the correctional facility, N.J.A.C. 10A:4-4.1(a)(2)(xxix); and *.254, refusing to work, or to accept a program or housing unit assignment, N.J.A.C. 10A:4-4.1(a). For the reasons that follow, we affirm.

We discern the following facts and procedural history from the record. Gaskins is serving a life sentence for aggravated manslaughter, weapon possession, and attempted homicide; his mandatory minimum prison term is eighty years, nine months, and one day. On May 21, 2019, Gaskins was ordered to pack his belongings in preparation for a cell move. From there, accounts of the incident diverge.

Officer Luis Campos, the corrections officer who gave Gaskins the order, reported that Gaskins "seemed agitated" and "replied with 'F--- you, I ain't going nowhere." Campos reported he gave Gaskins a second order to move or face disciplinary charges, and Gaskins then punched Campos in the

mouth with a closed fist. Sergeant Richard Orne reported he arrived at Gaskins's cell, heard Gaskins yelling obscenities and saw Gaskins strike Campos. Orne also used oleoresin capsicum spray toward Gaskins. Another officer called a "Code 33,"[1] which caused movement to be halted throughout the facility for about fifteen minutes. The disciplinary hearing report alleges that Gaskins's strike caused a cut on Campos's lower lip. Campos was not sent for medical treatment for this injury, and he refused medical treatment. Orne reported that Campos's uniform was disheveled, and that Campos was sweating.

According to Gaskins, he was the victim of an assault and set up by a corrections officer. He submitted a written statement saying that in response to being asked to change cells, he requested to see a sergeant and lieutenant. Gaskins told Campos "that's F'ed up, I'm already in a double-locked cell, why the f--- I gotta go to another F'in double-lock?" He stated that he told Campos that he didn't mean any disrespect, that he had just awoken and was upset: "I was just cursing, not at you, but this is f---ed up." Gaskins also stated that Campos then entered his cell and grabbed him "in a bear hug." Gaskins denied assaulting Campos and said Campos "attacked and maced" him for no reason.

---

[1] This is an emergency signal which indicates an inmate fight or disturbance.

A-5073-18

Gaskins contended that he was the one who was assaulted, and that "no medical reports showed any injuries to anyone else." The nurse who examined Gaskins in the clinic after the incident reported that he had elevated blood pressure and heart rate, eye irritation, difficulty breathing, redness and abrasions on his face, and redness on his neck and upper arm.

Gaskins was charged with prohibited acts *.002, *.306, and *.254. On May 24, 2019, a first hearing was postponed after Gaskins was granted twenty-four hours and counsel substitute to prepare his defense. On May 29, 2019, Gaskins submitted a statement for the record and defense to charges. In this report, he requested confrontation and cross-examination of six corrections officers: SCO Campos, SCO Vincent Wrege, Sgt. Orne, Sgt. Francis McHale, Lt. M. Magpiong, and Sgt. Gary Samosuk. Gaskins stated that there were also inmate witnesses who could verify his version of the events, and that the event happened inside his cell. Finally, in his defense, Gaskins requested a polygraph test pursuant to N.J.A.C. 10A:3-7.1. The request for three of these officer witnesses was approved (Campos, Wrege, Orne). Gaskin's request for three additional officers was denied because they did not witness the incident, and thus their confrontation would be irrelevant, pursuant to 10A:4-9.14(b).

Gaskins was adjudicated guilty.  His disciplinary hearing was held June 3, 2019.  For the *.002 charge, Gaskins was sentenced to 270 days' loss of commutation time, 270 days of administrative segregation, and thirty days' loss of phone privileges.  For the *.254 charge, Gaskins was sentenced to sixty days' loss of commutation time, sixty days of administrative segregation, and fifteen days' loss of recreational privileges, and for the *.306 charge, his penalty was combined with prohibited act *.002.  For each of these charges, the hearing officer (DHO), Tina Cortes, reviewed Gaskins's statement for the record.  The record reflects at the disciplinary hearing, Gaskins rescinded his request for confrontation of the witnesses.

As to the *.306 charge, DHO Cortes found that on June 3, 2019, Gaskins "changed his plea to no plea, did not wish to make a statement [and] rescinded all previous requests."  A separate disciplinary hearing note regarding Gaskins's confrontation request, states that Gaskins rescinded his request for confrontation and witnesses; Cortes's note is signed by counsel substitute. Gaskin's request for a polygraph was denied pursuant to N.J.A.C. 10A:3-7.1, because "no issues of credibility or new evidence have been determined to warrant its approval administratively."

A-5073-18

On June 4, 2019, Gaskins appealed the hearing officer's decision. Assistant Superintendent Amy Emrich entered an order upholding the DOC's decision on June 12, 2019. This appeal followed.

Gaskins raises the following issues on appeal:

> POINT I
> THE HEARING OFFICER FAILED TO CONDUCT THE DISCIPLINARY HEARING IN ACCORDANCE WITH TITLE 10A, AND THEREBY VIOLATED APPELLANT'S RIGHT TO DUE PROCESS, PURSUANT TO AVANT V. CLIFFORD, 67 N.J. 496 (1975); JONES V. DEPARTMENT OF CORRECTIONS, 359 N.J. SUPER. 70 (App. Div. 2003)

Our review of final administrative agency decisions is limited. Malacow v. N.J. Dep't of Corr., 457 N.J. Super. 87, 93 (App. Div. 2018). An administrative agency's decision will not be reversed unless it is "arbitrary, capricious or unreasonable or it is not supported by substantial credible evidence in the record as a whole." Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980). "'Substantial evidence' means 'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" Figueroa v. N.J. Dep't of Corr., 414 N.J. Super. 186, 192 (App. Div. 2010) (quoting In re Pub. Serv. Elec. & Gas Co., 35 N.J. 358, 376 (1961)).

6

Gaskins argues he was denied the opportunity to call witnesses pursuant to 10A:4-9.13, and that he was not allowed to confront and cross-examine witnesses, pursuant to 10A:4-9.14. He contends those procedural decisions denied him a fair hearing and violated his due process rights, as set forth in Avant v. Clifford, 67 N.J. 496 (1975), and Jones v. Dep't of Corr., 359 N.J. Super. 70 (App. Div. 2003). Finally, Gaskins argues that because there was a "credibility issue," he should have been granted a polygraph test, pursuant to N.J.A.C. 10A:3-7.1 (citing Johnson v. N.J. Dep't of Corr., 298 N.J. Super. 79 (1997)).

N.J.A.C. 10A:4-9.13(a) states that inmates "shall be allowed" to call fact witnesses "and present documentary evidence in their defense." N.J.A.C. 10A:4-9.14(b) states that the DHO "may refuse confrontation and cross-examination" when it is determined to be irrelevant. N.J.A.C. 10A:4-9.5(a) states that an investigation into an inmate infraction must be "conducted by designated staff of the correctional facility within [forty-eight] hours of the time the disciplinary report is served upon the inmate."

The record demonstrates Gaskins was granted the ability to call three witnesses and was denied the ability to call three others because their confrontation would be irrelevant, pursuant to N.J.A.C. 10A:4-9.14(b).

7

Gaskins rescinded his request to confront and cross-examine the witnesses, as shown by his substitute counsel's signature in multiple places. Gaskins's own waiver of the opportunity to call witnesses does not implicate a due process concern. Gaskins had the opportunity to confront and cross-examine witnesses, and the hearing officer conducted the disciplinary hearing in accordance with Title 10A.

Based on case law and our review of the record, the DOC's decision here is supported by substantial, credible evidence. Henry, 81 N.J. at 579-80. Further, our review of Gaskin's due process concerns shows Gaskins was afforded adequate procedural opportunity to present his defense.

Gaskins also argues that he should have been granted a polygraph test pursuant to 10A:3-7.1, as detailed in requests he submitted on May 29 and 30, 2019. We reject this argument.

The administrative code states that the grant of a polygraph examination with inmates is discretionary. See N.J.A.C. 10A:3-7.1. An administrator or designee may request a polygraph test "[w]hen there are issues of credibility regarding serious incidents or allegations which may result in a disciplinary charge; or [a]s part of a reinvestigation of a disciplinary charge, when the [a]dministrator or designee is presented with new evidence or finds serious

issues of credibility."  N.J.A.C. 10A3:7-1(a).  However, "[a]n inmate's request for a polygraph examination shall not be sufficient cause for granting the request."  N.J.A.C. 10A:3-7.1(c).

Gaskins cites this court's decision in Johnson, 298 N.J. Super. 79, to argue that a polygraph "should have been conducted to resolve any credibility issue."  The argument is unpersuasive.  Unlike the inmate in Johnson, Gaskins, through his counsel substitute, acknowledged that the information in the DOC's hearing report accurately reflected what took place at the disciplinary hearing.  Gaskins affirmatively waived his right to confront and cross-examine witnesses and had the benefit of counsel substitute.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION