**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4120-23

NAFEE COTMAN,

     Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS,

     Respondent.

_____

Submitted November 6, 2025 – Decided February 2, 2026

Before Judges Gummer and Jacobs.

On appeal from the New Jersey Department of Corrections.

Nafee Cotman, self-represented appellant.

Matthew J. Platkin, Attorney General, attorney for respondent (Donna Arons, Assistant Attorney General, of counsel; Azeem M. Chaudry, Deputy Attorney General, on the brief).

PER CURIAM

Nafee Cotman appeals from the July 12, 2024 final decision of the New Jersey Department of Corrections (DOC), finding that he committed a disciplinary infraction. Cotman contends the DOC's determination was not supported by substantial evidence in the record and violated his due process rights. For the reasons that follow, we vacate the DOC's decision and remand for further proceedings consistent with this opinion.

The record establishes the following facts. On November 14, 2023, authorities at the Garden State Youth Correctional Facility (GSYCF) conducted two unannounced searches that yielded a black Apple iPhone and other contraband not the subject of this appeal. The first search took place in the "I-Wing South F-pod first shower." Twenty-five minutes later, authorities conducted a second search in the "I-Wing South [t]rash can outside E-pod." The iPhone was discovered in the second search. On the date of the search, Cotman was housed in F-pod.

After completing its investigation, the DOC charged Cotman on February 2, 2024, with prohibited act *.009 under N.J.A.C. 10A:4-4.1(a) ("misuse, possession, distribution, sale, or intent to distribute or sell, an electronic communication device that is capable of transmitting, receiving, or storing data and/or electronically transmitting a message, image, or data that is not

2

authorized for use or retention while assigned to a secure correctional facility"). The DOC alleged Cotman was the "primary owner/user" of the iPhone. The charge was based on photos and videos found on the phone showing Cotman while on work details within GSYCF's confines. Investigators claimed the photos were uploaded and shared on Cotman's Instagram account. They also discovered phone messages to an individual identified as "K.N.," who had communicated with Cotman on JPay.[1]

Cotman pleaded not guilty, stating in writing, "[i]t wasn't my phone. I was not involved in this. Someone else posted it [to my Instagram account]. I didn't do it." He also requested and was granted assistance of a counsel substitute.

Cotman and counsel substitute submitted a signed "Confrontation Request" form on May 2, 2024, asking to confront the senior investigator. In part, the form advises the signator that "[i]f you are scheduled for a confrontation and attend unprepared[,] confrontation will not be rescheduled." A notation on the form dated May 2, presumably from a prison administrator, reads, "email sent requesting availability." There is nothing in the record to indicate Cotman

---

[1] JPay is a service available in all New Jersey prisons that allows individuals to transfer money and exchange emails and other forms of electronic communication with inmates and non-inmates.

A-4120-23

was granted the opportunity to confront the senior investigator in person at the hearing. Neither is there anything in the record to reflect he was denied permission.

Cotman received permission to pose questions to the senior investigator in writing. Counsel substitute submitted sixteen written questions to that investigator, designated "Person to Confront." There were handwritten responses to each question. No printed name or signature accompanied the answers to reflect who completed the form.

Cotman's third question read, "[Incarcerated Person] Cotman states that he was initially placed on [Pre-Hearing Disciplinary Housing] because the name (K[.]N[.]) on the screen saver of the phone matched one of his available e-mail contacts. Is this accurate?" The handwritten response read, "[t]here was a text message from K[.]N[.] to Cotman who is housed at [GSYCF]." A page following the Confrontation Questions form contained an unsigned notation dated "5/29/24" that read, "[i]nmate now requesting copy of text message[.]" In apparent response, there [wa]s a notation, "SID [Special Investigations Division] said they can't send it[.]" The record is devoid of explanation as to why Cotman could not be provided with a copy of the text message. Further,

4

our review of the record does not reflect whether Cotman waived his presence at the disciplinary hearing or whether instead he was excluded from it.

On June 19, 2024, the Disciplinary Hearing Officer (DHO) found Cotman guilty. On the "Adjudication of Disciplinary Charge" form, the DHO summarized the evidence on which she relied, stating she had considered written questions from Cotman and the investigator's responses, photographs, reports prepared by members of the SID, unspecified "documents," and the February 2 charging document titled "Disciplinary Report." The Disciplinary Report read in pertinent part, "[d]uring an on-going investigation[,] it was identified that inmate Nafee Cotman was the primary owner/user of the black Apple iPhone discovered."

The DHO imposed a sanction of ninety days' loss of commutation credits, sixty days' loss of telephone privileges, 125 days in the restorative housing unit, permanent loss of contact visits, thirty days' loss of recreation and JPay, and five hours of extra duty.

Cotman administratively appealed, arguing the SID and the DHO had denied his request to review "the alleged text message/screen saver used to link the cellular phone to him[,]" his request to obtain a witness statement from another inmate identified by the initials D.A. who purportedly "would have

5

provided testimonial evidence relevant to the allegations[,]" and "his right to be present throughout [the] hearing[,]" complaining specifically about his "exclu[sion] . . . from the confrontation held with" the investigator. He also contended the "guilty finding[ was] arbitrary, capricious, and unreasonable" because it was "not supported by substantial evidence in the record." On July 12, 2024, the Assistant Superintendent upheld the DHO's decision, finding the DHO had complied with the applicable regulations "and the provisions that safe guard discipline" and based the decision "on substantial evidence."

On appeal to this court, Cotman raises the following arguments:

POINT ONE

THE APPELLANT'S RIGHT TO DUE PROCESS WAS VIOLATED IN NUMEROUS RESPECTS. (Raised below)

A. THE DHO DENIED THE PLAINTIFF'S REQUEST TO REVIEW ALL EVIDENCE RELATED TO THE ALLEGATIONS MADE AGAINST HIM.

B. THE DHO DENIED THE PLAINTIFF DUE PROCESS WHEN SHE DENIED HIS RIGHT TO BE PRESENT THROUGHOUT HIS HEARING.

POINT TWO

THE DHO'S GUILTY FINDING WAS ARBITRARY, CAPRICIOUS, AND UNREASONABLE, AS IT WAS

6

NOT SUPPORTED BY SUBSTANTIAL EVIDENCE
IN THE RECORD. (Raised below)

At the outset, we note that Cotman's merits brief referenced the certification of Sabir Williams, a fellow inmate, and included a copy of that certification in his appellate appendix. The certification in question was submitted to challenge the investigators' contention that Cotman had exclusive contact with K.N. However, Williams's certification was not submitted at the disciplinary hearing on June 19, nor does the record indicate Cotman had requested to submit that certification or any testimony from Williams beforehand.

In general, "appellate courts will decline to consider questions or issues not properly presented to the trial court when an opportunity for such presentation is available . . . ." State v. Robinson, 200 N.J. 1, 20 (2009) (quoting Nieder v. Royal Indem. Ins. Co., 72 N.J. 229, 234 (1973)). That legal premise applies equally to appeals from final agency decisions. See In re Stream Encroachment Permit, 402 N.J. Super. 587, 602 (App. Div. 2008) ("Normally, we do not consider issues not raised below at an administrative hearing"). Consistent with this jurisprudence and because Cotman provides no explanation for presenting Williams's certification post-hearing, we decline to consider it.

A-4120-23

Our review of an agency's decision is limited.  Mejia v. N.J. Dep't of Corr., 446 N.J. Super. 369, 376 (App. Div. 2016).  In reviewing the DOC's decision, we presume the validity of the DOC's "exercise of its statutorily delegated responsibilities."  Lavezzi v. State, 219 N.J. 163, 171 (2014) (citing Newark v. Nat. Res. Council of Env't Prot., 82 N.J. 530, 539 (1980)).  "[O]ur role is limited to determining:  (1) whether the [DOC]'s decision conforms with relevant law; (2) whether the decision is supported by substantial[,] credible evidence in the record; and (3) whether, in applying the law to the facts, the [DOC] clearly erred in reaching its conclusion."  Conley v. N.J. Dep't of Corr., 452 N.J. Super. 605, 613 (App. Div. 2018) (citing In re Stallworth, 208 N.J. 182, 194 (2011)).

When reviewing the validity of an agency's disciplinary decision, we apply established principles to ensure compliance with both regulatory and constitutional due-process requirements, including those set forth in Avant v. Clifford:

> (a)   written notice of the claimed violations; (b) disclosure of evidence; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body[,] members of which need not be judicial officers or lawyers; and (f) a written statement by the

A-4120-23

factfinders as to the evidence relied on and reasons [for acting].

[67 N.J. 496, 523 (1975) (alteration in original).]

Pursuant to N.J.A.C. 10A:4-9.10:

> (a) An inmate shall be permitted to be present throughout the disciplinary hearing except during the necessary deliberations of the Disciplinary Hearing Officer or Adjustment Committee and except in instances where correctional facility security would be jeopardized by the inmate's presence.

> (b) The reasons for excluding an inmate from the disciplinary hearing must be well documented in the record.

Inmates are entitled to "present documentary evidence in their defense." N.J.A.C. 10A:4-9.13(a). Under N.J.A.C. 10A:4-9.14(a), an inmate is entitled to confront and cross-examine the State's witnesses "in such instances where the [DHO] . . . deems it necessary for an adequate presentation of the evidence . . . ." N.J.A.C. 10A:4-9.14(b) enumerates the bases on which the DHO "may refuse confrontation and cross-examination[.]" If the DHO grants the request for confrontation, pursuant to N.J.A.C. 10A:4-9.14(c), the inmate then provides written questions to the DHO for review.

N.J.A.C. 10A:4-9.14(d) provides the DHO "may take testimony in a manner or form which is determined to be necessary to protect correctional

facility/unit safety, security, orderly operation, or goals[]" and may "disallow" questions for specific reasons set forth in the regulation. The DHO then "direct[s] all remaining questions to the . . . witness. The inmate . . . may request additional follow-up confrontation/cross-examination questions . . . ." N.J.A.C. 10A:4-9.14(e). Pursuant to N.J.A.C. 10A:4-9.14(f), "[i]f the Disciplinary Hearing Officer denies the request of the inmate . . . to call a witness(es) or ask certain cross-examination questions, the reasons for the denial shall be specifically set forth on the Adjudication of Disciplinary Report."

There is no indication in the record that Cotman was scheduled for confrontation and failed to appear or that the DHO had invoked any of the regulatory bases for denying him that right. The record is devoid of any explanation as to why his request to confront the senior investigator was limited to written questions or why he was not permitted to review the text message referenced in response to those questions. Likewise, the record lacks information whether Cotman was given the opportunity to request additional follow-up questions pursuant to N.J.A.C. 10A:4-9.14(e).

The DHO's handwritten adjudication does not explain why Cotman was excluded from the hearing or specify the evidence relied on in reaching a guilty finding, other than referencing "documents of inmate Nafee using a cellphone"

and the charging document, which itself is conclusory. Regarding Cotman's request to confront the senior investigator, the DHO's handwritten adjudication states "confrontation was completed with SID," presumably referencing the written questions. Similarly, the Assistant Superintendent's finding that the DHO had complied with Title 10A was unsupported by any stated reason for limiting Cotman's confrontation of a key witness to written questions and denying him access to a key piece of documentary evidence.

In Jones v. Dep't of Corr., we held:

> Where a party's opportunity to develop and present evidence supporting his challenge to charges filed against him has been unduly curtailed, there can be no determination that the requirements of the substantial evidence rule have been satisfied. Application of the substantial evidence rule presupposes an adequate opportunity by the party against whom a decision has been rendered to have marshalled and offered evidence.

> With allowances for the special rule that due process rights in prison disciplinary proceedings may be tailored to meet the needs of the institutional context in which such proceedings arise, prison inmates may not be deprived of basic due process protections. See Avant, 67 N.J. at 525.

> [359 N.J. Super. 70, 75 (App. Div. 2003).]

Simply put, the record offers no explanation why Cotman was not permitted to have a copy of the text message, see N.J.A.C. 10A:4-9.13(a), or to

11

be present at the hearing, see N.J.A.C. 10A:4-9.10. In the absence of those explanations, we conclude Cotman's "opportunity to develop and present evidence supporting his challenge to charges filed against him [was] unduly curtailed[.]" Jones, 359 N.J. Super. at 75. Consequently, we vacate the DOC's July 12, 2024 final decision and remand for a new hearing consistent with this opinion.

On remand, the DHO shall provide Cotman with either: (i) a copy of the text he requested and the opportunity to be present at the hearing and to confront the investigator in person; or (ii) an explanation in writing consistent with the applicable regulations setting forth why he was denied the opportunity to be present at the hearing, to obtain and present the requested evidence, and to confront in-person an adverse witness and ask that witness follow-up questions.

Vacated and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

12