289 N.J. Super. 566 (1996)
674 A.2d 621
ARTHUR WAKEFIELD, APPELLANT,
v.
STEVEN PINCHAK, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted April 2, 1996.
Decided April 19, 1996.
*568 Before Judges DREIER, KESTIN and CUFF.
Appellant filed a letter brief pro se.
*569 Deborah T. Poritz, Attorney General, attorney for respondent (Mary C. Jacobson, Assistant Attorney General, of counsel; Dianne M. Moratti, Deputy Attorney General, on the brief).
The opinion of the court was delivered by KESTIN, J.A.D.
Appellant, an inmate in the State correctional system who sometimes functions as a "counsel-substitute" for other inmates, see Avant v. Clifford, 67 N.J. 496, 529, 341 A.2d 629 (1975), was charged with two [*][1].704[2] disciplinary offenses based upon allegations that he forged another inmate's signature on two documents filed with the United States District Court for the District of New Jersey. Aside from appellant's denial of the charges, no oral testimony was offered at the hearing, either by the charging authorities or by appellant. The hearing officer examined a series of documents that were received in evidence, including some from the Internal Affairs Unit of the prison designated as "confidential". The contents of these "confidential" documents, relating to an investigation and handwriting and typeface analyses conducted by the Internal Affairs Unit, were "summarized" to appellant. Although appellant challenged the handwriting analysis and requested access to the "confidential" documents, the request was denied "to preserve confidentiality".
The charges were upheld, based on the documentary evidence in the light of appellant's denial concerning the alleged forgery. Concurrent sanctions were imposed of fifteen days detention, 180 days administrative segregation, and 180 days loss of commutation time. The decisions were affirmed on internal appeal.
*570 Three arguments are raised in this appeal. We regard as clearly without merit those in which appellant reproaches various asserted procedural shortcomings and contends that the prison authorities were without jurisdiction to impose disciplinary sanctions upon appellant for the infractions alleged. R. 2:11-3(e)(1)(D) and (E). The determination must be set aside, however, because appellant had insufficient access to the proofs against him and, therefore, had no adequate opportunity to defend.
Due process of law is not a fixed star in the constitutional firmament. It radiates variably in application, "call[ing] for such procedural protections as the particular situation demands." Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484, 494 (1972).
The due process values that inform required procedures in prison disciplinary proceedings were articulated in two seminal cases, Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), and Avant v. Clifford, 67 N.J. 496, 341 A.2d 629 (1975). Some procedures that are generally required as a matter of due process entitlement are properly modified, attenuated or even absent in prison disciplinary proceedings because of special considerations arising from the institutional context of such matters and the balancing of rights and interests that due process always entails. Wolff, supra, 418 U.S. at 555-58, 94 S.Ct. at 2974-75, 41 L.Ed.2d at 950-52. Even so, a decent consideration of the realities involved does not require that the rights of inmates in such matters must always be less extensive than those of litigants in other types of proceedings. Rather, "we have not been satisfied with enforcement of naked constitutional right, but have gone further to strike down arbitrary action and administrative abuse and to insure procedural fairness in the administrative process." Avant, supra, 67 N.J. at 520, 341 A.2d 629. "[I]n applying the requirements of procedural `due process' to our scrutiny of ... standards [governing prison disciplinary matters], we use the term in that broader aspect, not confined entirely to constitutional right as such but going beyond." Id. at 521, 341 A.2d 629.
*571 It is commonly understood that one specific accommodation to the particular institutional circumstances in which prison disciplinary proceedings arise, is that matter bearing upon personal safety or institutional security and good order may be seen as having confidential qualities, even when an element of proof on a charged offense. Cf. McDonald v. Pinchak, 139 N.J. 188, 194, 652 A.2d 700 (1995); Avant, supra, 67 N.J. at 561, 341 A.2d 629. We accept the formulation offered in the Attorney General's brief as apt. Dissemination of matter that "contains information which could lead to the discovery of the identity of confidential informants and the discovery of investigative techniques employed by the Internal Affairs Unit[]" may be subject to appropriate strictures. See also, e.g., Calloway v. Fauver, 544 F. Supp. 584, 604 (D.N.J. 1982).
Equally clear, given constitutional imperatives, especially those for notice, disclosure, and, ultimately, a fair opportunity to prepare a defense, Wolff, supra, 418 U.S. at 563-64, 94 S.Ct. at 2978, 41 L.Ed.2d at 955-56; Avant, supra, 67 N.J. at 525, 341 A.2d 629, is that the interest in confidentiality cannot be applied categorically or as an absolute. The need for confidentiality must be particularly evaluated in every case because, to the extent a charged inmate is denied access to any information bearing upon pending charges, limits are placed on his ability to defend against those charges. And, because of the limitations on an accused's rights that confidentiality necessarily imposes, the extent of confidentiality invoked in any case may not exceed that which is truly necessary to promote a genuine, recognizable need or interest. The balance that due process always requires is, in such matters, between the genuine need to maintain confidentiality and the importance of the information at issue, as realistically appraised, in order for a defense to be effective. See McDonald, supra, 139 N.J. at 202, 652 A.2d 700. Although it is difficult to envision any legitimate interest that, in the light of due process needs, will ever justify total non-disclosure, it is more productive to state the principle positively: sensitive information may be accorded whatever *572 protection is necessary that will not substantially eradicate the basic procedural protections that due process of law affords.
The charge in this matter was as uncomplicated as its factual basis was simple. The only question to be determined was whether appellant had forged another inmate's signature on two occasions. The hearing officer had the benefit of a report describing an administrative investigation of the charges, the alleged forgeries themselves, verified handwriting exemplars from both appellant and the inmate whose signature he was charged with having forged, and the report of an investigator/document examiner expressing two opinions: first, that appellant had written the signatures at issue, and second, that the typed characters on the signed documents matched those on the printwheel taken from appellant's typewriter during the investigation. None of these documents was revealed to appellant. Instead, the contents of all were "summarized" to him. These documents have been provided to us in a confidential appendix to respondent's brief. We have examined them, and discern very little, if anything, in any of them that could reasonably be seen as requiring the protection that confidential treatment affords.
The three-and-one-half page investigative report contains nothing arcane or sensitive. It recounts what appears to be a reasonably thorough and fairly routine investigation based upon complaints from U.S. District Court personnel. It includes references to interviews with several individuals having pertinent information, and to the procedures used to acquire the handwriting samples and printwheel and to have them analyzed. The handwriting exemplars themselves are unremarkable except that those of the inmate whose signature was allegedly forged consist of earlier handwritten memoranda to prison authorities respecting prison business. And, the report of the investigator/document examiner, while entirely conclusory, is equally straightforward.
There is nothing in any of these documents that can reasonably be seen to bear upon the interests of the prison authorities in protecting confidential informants, not disclosing investigative *573 techniques, or preserving the safety and security of the prison environment and persons therein; and, respondent offers no particularized argument to establish such a connection. From what we can discern from the investigative report, there were no confidential informants in this matter at all. If there had been, careful redaction would have protected them. To the extent the handwriting samples of the other inmate contained anything that bore upon his personal confidentiality or privacy interests, redaction of such matter would also have been indicated and could have been effectively employed. Certainly, there can be no claim of confidentiality at all in the samples of appellant's handwriting that were used. Furthermore, we are unable to discern, either in the investigative report or in the report of the investigator/document examiner, the disclosure of any investigative or analytical techniques that are unusual or that reason would otherwise suggest need to be kept from the person under investigation. Finally, we see no possible justification whatsoever in keeping the alleged forgeries themselves from appellant.
Sequestration of the documents, on the other hand, clearly deprived appellant of notice, with any detail at all, of the factual bases of the charges against him. We cannot know from the record before us what detail was provided to appellant in the "summaries" that were furnished, i.e., whether appellant was given sufficient particulars that would have enabled him to focus even upon the occasions involved or the particular documents alleged to have been forged. At the very least, by not being afforded access to the alleged forgeries, the handwriting samples and the investigator/document examiner's report, appellant had no opportunity whatsoever to meet the charges of forgery.
The importance of confidentiality cannot be gainsaid, both as a principle and a practice designed to foster legitimate concerns and protect against harm or disruption; but its talismanic invocation where no such interests are genuinely at risk, or its overextensive use where such risk is minimal, are improper. See Jacobs v. Stephens, 139 N.J. 212, 221-22, 652 A.2d 712 (1995). *574 Particular principles of due process are sacrificed when confidentiality is too facilely invoked, especially where an inmate who has been charged with a disciplinary violation is, consequently, denied the opportunity to know with adequate detail the factual bases of the charges against him and to meet those allegations. Of equal importance, the case-by-case balancing of rights and interests that due process always entails is vitiated if even the most basic information having to do with a pending charge is kept from the person charged because of automatic or excessive invocation of confidentiality.
In this case, given the extant circumstances and the realities of the situation at hand, the required due process balance that must always be drawn, between institutional needs and the inmate's interests in a fair hearing, Avant, supra, 67 N.J. at 530 n. 27, 341 A.2d 629, clearly leads to a conclusion that appellant's need to know with adequate particularity the factual bases of the charges against him so as to be afforded an opportunity to meet them was far more significant than the charging authority's interest in the confidentiality of the particular documents at issue in the circumstances presented. See McClain v. College Hospital, 99 N.J. 346, 359, 492 A.2d 991 (1985). Little, if anything, on the face of the documents betokens a need for confidentiality, and respondent has made no particularized showing that would enable us to discern any.
Reversed and remanded.
NOTES
[1] "Prohibited acts preceded by an asterisk are considered the most serious and result in the most severe sanctions (See N.J.A.C. 10A:4-5, Schedule of Sanctions for Prohibited Acts)." N.J.A.C. 10A:4-4.1.
[2] "perpetrating frauds, deceptions, confidence games, riots or escape plots[.]" Ibid.