**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0090-18T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

MELVIN D. HESTER, a/k/a
H PANCAKE,

    Defendant-Appellant.

_____

Submitted September 14, 2020 – Decided September 24, 2020

Before Judges Fasciale and Rothstadt.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Indictment No. 17-04-0351.

Joseph E. Krakora, Public Defender, attorney for appellant (Perri J. Koll, Designated Counsel, on the briefs).

Fredric M. Knapp, Morris County Prosecutor, attorney for respondent (Paula Jordao, Assistant Prosecutor, on the brief).

PER CURIAM

Defendant appeals from his conviction for third-degree aggravated assault on a law enforcement officer, N.J.S.A. 2C:12-1(b)(5)(h).[1] The appeal requires us to examine the jury charge; and to determine whether the judge erred in her response to a jury question, by quashing three subpoenas, by admitting other-crimes evidence—including defendant's supervision in the jail—and by imposing a mandatory extended prison term of six years with two years of parole ineligibility. We affirm.

Defendant was incarcerated in the Morris County Correctional Facility (MCCF) when the incident that led to the charges occurred. The MCCF is a multi-story building, which houses inmates in different locations based on risk classifications. Based on his classification, defendant was housed in the third-floor Manageable Control Unit (3DMCU). He was under more intensive supervision than other inmates and had limited time out of his cell.

The incident arose when Officers Frank Corrente and Robert Feske were conducting a formal inmate count of the 3DMCU. After his cell door was unlocked, defendant charged at Officer Corrente and punched him in the face

---

[1] The jury acquitted him of fourth-degree aggravated assault for throwing bodily fluid at a law enforcement officer, N.J.S.A. 2C:12-13.

A-0090-18T3

and head.  Officer Corrente sustained a concussion, a cut over his right eye, and a sprained wrist.

On appeal, defendant argues:

POINT I

THE JUDGE COMMITTED HARMFUL ERROR IN FAILING TO CHARGE THE JURY WITH CAUSATION AND THE JUDGE'S RESPONSE TO A JURY QUESTION WAS INADEQUATE BECAUSE THE JUDGE FAILED TO INSTRUCT THE JURY TO BEGIN DELIBERATIONS ANEW[.]  (Raised Below).

A.  The [Judge] Erred in Failing to Charge Causation at the Outset of the Jury Instruction.

B.  The [Judge's] Answer to the Jury's Question Was Inadequate [B]ecause it [F]ailed to [I]nstruct the [J]ury to [B]egin [D]eliberations [A]new.

POINT II

THE TRIAL J[UD]GE ERRED IN PERMITTING THE PROSECUTOR TO INTRODUCE EVIDENCE THAT [DEFENDANT] WAS BEING HOUSED IN AN INTENSE SUPERVISION FLOOR.  THE RESULTANT DENIAL OF A FAIR TRIAL DEMANDS REVERSAL OF THE CONVICTION. (Raised Below).

POINT III

THE TRIAL JUDGE ERRED IN QUASHING SUBPOENAS TO THE PRISON FOR PORTIONS OF THE PRISON'S POLICIES AND PROCEDURES AND FOR [DEFENDANT'S] OWN FILED

3

COMPLAINTS AND GRIEVANCES[.] (Raised Below).

    A. The [Judge] Erred in Quashing [Defendant's] Narrowly Tailored Subpoena to [MCCF] for [i]ts Standard Operating Procedures.

    B. The [Judge] Erred in Quashing [Defendant's] Subpoena to [MCCF] for His Own [C]omplaints and in [S]uppressing [T]estimony [A]bout the [C]omplaints.

POINT IV

THE ADMISSION OF OTHER-CRIMES EVIDENCE THAT DEFENDANT HAD PREVIOUSLY THREATENED OFFICER CORRENTE WAS ERRONEOUS AND FAR TOO PREJUDICIAL IN A CASE W[HE]RE DEFENDANT WAS ALLEGED TO HAVE ASSAULTED THE VICTIM. THE RESULTANT DENIAL OF A FAIR TRIAL DEMANDS REVERSAL OF THE CON[V]ICTION. (Raised Below).

POINT V

[DEFENDANT] WAS NOT SUBJECT TO [AN] EXTENDED TERM UNDER N.J.S.A. 2C:43-6.4[.] (Raised Below).

POINT VI

THE TRIAL WAS SO INFECTED WITH ERROR THAT EVEN IF EACH INDIVIDUAL ERROR DOES NOT REQUIRE REVERSAL, THE AGGREGATE OF THE ERRORS DENIED [DEFENDANT] A FAIR TRIAL. (Raised Below).

4

## I.

We begin by addressing the jury charge. Here, defendant contends the judge erred by not initially giving a causation charge; and then once she gave that charge in response to a jury question, she erred by not directing the jury to begin deliberations anew. Although defendant requested the charge in defense counsel's written memorandum, defendant did not object when the judge failed to charge causation. And after she responded to the jury question and charged causation, defendant did not ask that the judge direct the jury start over in its deliberations.

### (a)

Our standard of review of jury charges is well settled. "[A]ppropriate and proper [jury] charges are essential for a fair trial." State v. Baum, 224 N.J. 147, 158-59 (2016) (quoting State v. Reddish, 181 N.J. 553, 613 (2004)). We must give "careful attention" to jury instructions. State v. Montalvo, 229 N.J. 300, 320 (2017). "They 'must provide a "comprehensible explanation of the questions that the jury must determine, including the law of the case applicable to the facts that the jury may find."'" Ibid. (quoting State v. Singleton, 211 N.J. 157, 181-82 (2012)). "Because proper jury instructions are essential to a fair trial, 'erroneous instructions on material points are presumed to' possess the

A-0090-18T3

capacity to unfairly prejudice the defendant." Baum, 224 N.J. at 159 (quoting State v. Bunch, 180 N.J. 534, 541-42 (2004)). Because there was no objection, we review for plain error. State v. Funderburg, 225 N.J. 66, 79 (2016); State v. Munafo, 222 N.J. 480, 488 (2015). Plain error is one that is "clearly capable of producing an unjust result." R. 2:10-2.

Here, the judge used—without objection—the Model Jury Charge (Criminal), "Aggravated Assault – Upon Certain Corrections Personnel (Attempting to Cause or Purposely, Knowingly or Recklessly Causing Bodily Injury) N.J.S.A. 2C:12-1b(5)(h)" (approved Oct. 26, 2015). Model jury charges are typically afforded a "presumption of propriety." Estate of Kotsovska v. Liebman, 221 N.J. 568, 596 (2015). During deliberations, the jury asked, "if the injury was not a direct result of the defendant action (i.e. a punch), but was related to the altercation (i.e. bruised hand from falling on defendant), does that constitute bodily injury caused by the defendant[?]" In response, the judge re-instructed on the requisite states of mind for aggravated assault. She then read to the jury, without objection, the causation charge and provided a copy to them. As to causation, the judge charged the jury:

> Causation has a special meaning under the law. To establish causation the State must prove two elements, each beyond a reasonable doubt.

A-0090-18T3

First, but for the defendant's conduct the result in question would not have happened. In other words, without defendant's actions the result would not have occurred.

Second, the actionable result must have been within the design or contemplation of the defendant. If not, it must involve the same kind of injury or harm as that designed or contemplated and must also not be too remote, too accidental in its occurrence, or too dependent on another's volitional act to have a just bearing on the defendant's liability or on the gravity of his offense.

And that's when purposeful or . . . knowing conduct is involved.

When reckless conduct is involved, for reckless conduct the actual result must have been within the risk of which the defendant was aware. If not, it must involve the same kind of injury or harm as the probable result and must also not be too remote, too accidental in its occurrence, or too dependent on another's volitional act to have a just bearing on the defendant's liability or on the gravity of his offense.

See Model Jury Charges (Criminal), "Causation (N.J.S.A. 2C:2-3)" (approved June 10, 2013).

It is well settled that "portions of a charge alleged to be erroneous cannot be dealt with in isolation[,] but the charge should be examined as a whole to determine its overall effect." State v. Wilbely, 63 N.J. 420, 422 (1973). We must "not lose sight of the distinction between instructions that are legally

7

incorrect and those that are merely 'capable of being improved.'" State v. Cagno, 211 N.J. 488, 514-15 (2012) (quoting State v. Delibero, 149 N.J. 90, 106 (1997)). Based on the entirety of the jury instruction, we see no plain error. See Wilbely, 63 N.J. at 422.

(b)

There was no basis to direct the jury to deliberate anew after the judge responded to the jury question. "It is firmly established that '[w]hen a jury requests a clarification,' the trial [judge] 'is obligated to clear the confusion.'" State v. Savage, 172 N.J. 374, 394 (2002) (first alteration in original) (quoting State v. Conway, 193 N.J. Super. 133, 157 (App. Div. 1984)). If the jury's question is ambiguous, "the judge is obligated to clear the confusion by asking the jury the meaning of its request." State v. Graham, 285 N.J. Super. 337, 342 (App. Div. 1995).

The judge contemplated the jury's question, which was straightforward, and discussed her response with counsel before addressing the jury. Counsel agreed to the judge's response. The judge then responded to the jury, and they did not ask any follow-up questions. See State v. McClain, 248 N.J. Super. 409, 421 (App. Div. 1991) (emphasizing that the jury's failure "to ask for further clarification or indicate confusion demonstrates that the response was

8

satisfactory"). The judge sufficiently responded, the jury understood the response, and the jury continued deliberating without any difficulty. Under these circumstances, there was no reason to direct the jury to restart deliberations. See ibid.; see also State v. Morgan, 423 N.J. Super. 453, 469-70 (App. Div. 2011), aff'd, 217 N.J. 1 (2013) (presuming a judge's response to a jury question is proper when the judge consults with counsel before responding).

## II.

We now address defendant's evidentiary argument. He contends that it was prejudicial for the jury to learn that he was housed on a floor of the MCCF that required "more intensified supervision." We review a trial judge's evidentiary rulings under an abuse of discretion standard. State v. G.E.P., 458 N.J. Super. 436, 455 (App. Div. 2019), aff'd in part, rev'd in part, ___ N.J. ___, ___ (2020) (slip op. at 16). We "must not 'substitute [our] own judgment for that of the trial [judge] unless there was a 'clear error of judgment'—a ruling 'so wide of the mark that a manifest denial of justice resulted.'" State v. Scott, 229 N.J. 469, 479 (2017) (quoting State v. Perry, 225 N.J. 222, 233 (2016)). We see no abuse of discretion whatsoever.

A-0090-18T3

In her opening statement to the jury, defense counsel referenced the level of supervision defendant received while an inmate at the MCCF. Defense counsel stated:

> Imagine that you're in [j]ail. You're locked in a cell for [twenty-three] hours [a] day. You're not getting along with the guards for whatever reason. But you're locked in that cell for [twenty-three] hours [a] day. You get one hour outside of that cell five times per week.
>
> Now, imagine that there's a guard on your Unit that doesn't like you. You're having issues with him. But you can't leave. You have nowhere to go. You're forced to interact with him every day. He's responsible for your life. And you depend on him for your most basic needs.

The State argues that such an opening statement opened the door to evidence about defendant's location in the MCCF.

> The "opening the door" doctrine is essentially a rule of expanded relevancy and authorizes admitting evidence which otherwise would have been irrelevant or inadmissible in order to respond to (1) admissible evidence that generates an issue, or (2) inadmissible evidence admitted by the court over objection. <u>The doctrine of opening the door allows a party to elicit otherwise inadmissible evidence when the opposing party has made unfair prejudicial use of related evidence</u>. That doctrine operates to prevent a defendant from successfully excluding from the prosecution's case-in-chief inadmissible evidence and then selectively introducing pieces of the evidence for the defendant's own advantage, without allowing the prosecution to place the evidence in its proper context.

10

> [State v. B.M., 397 N.J. Super. 367, 380-81 (App. Div.
> 2008) (emphasis added) (quoting State v. James, 144
> N.J. 538, 554 (1996)).]

See also Alves v. Rosenberg, 400 N.J. Super. 553, 564 (App. Div. 2008) (specifying that this doctrine "provides an adverse party the opportunity to place evidence into its proper context"). However, the doctrine is subject to certain limitations. Evidence may not be admitted where the probative value of the otherwise inadmissible evidence "is substantially outweighed by the risk of . . . [u]ndue prejudice, confusion of issues, or misleading the jury[.]" N.J.R.E. 403; B.M., 397 N.J. Super. at 381.

Defense counsel characterized defendant's supervision—being "locked in a cell for [twenty-three] hours [a] day"—as an unfair policy of the MCCF, rather than a result of defendant's actions. The State corrected that characterization by introducing evidence generally explaining the supervision in the MCCF. The State attempted to place the supervision in context. See B.M., 397 N.J. Super. at 381. For example, the assistant prosecutor asked Officer Corrente on direct examination the following questions.

> [Assistant Prosecutor:] Officer Corrente, what does 3DMCU stand for?
>
> [Officer Corrente:]  Management Control Unit.

11

[Assistant Prosecutor:] Okay. And are inmates housed in that Unit under more intensified supervision?

[Officer Corrente:] Yes.

[Assistant Prosecutor:] Okay. And, specifically being, is that the allotment of time that they're allowed out of their cell each day?

[Officer Corrente:] Yeah. If you're over there, there's a specific amount of time that you're allowed out of a cell, yes.

[Assistant Prosecutor:] Okay. And that is part of that Housing Unit?

[Officer Corrente:] Yes.

. . . .

[Assistant Prosecutor:] Now, during your assignment with 3DMCU, was [defendant] housed in that area?

[Officer Corrente:] Yes.

In context, the probative value of this information outweighed the risk of undue prejudice, especially given defendant's position that the supervision was related to an unfair MCCF policy. Additionally, the judge ensured that this part of the assistant prosecutor's direct examination was limited to what "3DMCU" stood for and whether inmates on that floor were subject to more supervision. The judge specifically stated that the State could not ask about defendant's behavioral issues.

III.

After the grand jury returned the indictment, defendant served three subpoenas for documents from the MCCF. The first sought reports of his incarceration, names of inmates housed next to his cell, and standard operating procedures for corrections officers. The MCCF produced documentation except for policies and confidential information that would jeopardize the safety of the MCCF. The second sought fifty-four detailed policies identified in the Morris County Sheriff's Office Policy and Procedural Manual. The third sought administrative grievances filed by defendant.

Defendant argues that the judge erred in quashing defendant's subpoena to the MCCF requesting its policies and procedures. Defendant contends that he needed these policies so that he could ascertain whether Officer Corrente was acting in the performance of his duties. See N.J.S.A. 2C:12-1(b)(5)(h). Defendant asserts that he "intended to put forth the theory that [Officer] Corrente overreacted to [defendant] based on their prior interactions and that [Officer] Corrente's response was outside the scope of what is required under the operating procedures."

"We review the trial [judge's] decision to quash the subpoenas pursuant to an indulgent standard of review." In re Subpoena Duces Tecum on Custodian

13

of Records, 214 N.J. 147, 162 (2013).  Thus, "[w]e generally defer to [the] trial [judge's] disposition of discovery matters unless the [judge] . . . abused [her] discretion or [her] determination is based on a mistaken understanding of the applicable law."  Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371 (2011) (first alteration in original) (quoting Rivers v. LSC P'ship, 378 N.J. Super. 68, 80 (App. Div. 2005)).  We conclude there is no abuse here.

Generally, a criminal defendant is entitled to "broad discovery."  State v. Scoles, 214 N.J. 236, 252 (2013) (quoting State v. D.R.H., 127 N.J. 249, 256 (1992)); see R. 3:13-3(b).  "To advance the goal of providing fair and just criminal trials, we have adopted an open-file approach to pretrial discovery in criminal matters post-indictment."  Scoles, 214 N.J. at 252.  Rule 3:13-3 provides an extensive list of relevant materials that the State is required to turn over to a defendant.  R. 3:13-3(b)(1) (including, but not limited to, "books, tangible objects, papers or documents obtained from or belonging to the defendant"; "reports or records of prior convictions of the defendant").

However, "[b]uilt into the criminal discovery rule, . . . is a provision for protective orders to balance the defendant's right to discovery and the State's interest in protecting against certain harms."  Scoles, 214 N.J. at 253.  Rule 3:13-3 and Rule 3:9-1 govern post-indictment discovery, which are still subject to a

14

relevance standard. <u>State v. Hernandez</u>, 225 N.J. 451, 453 (2016). "Relevance is the touchstone of discovery." <u>Id.</u> at 468. "Evidence is relevant if it 'ha[s] a tendency in reason to prove or disprove any fact of consequence to the determination of the action.'" <u>Id.</u> at 462 (alteration in original) (quoting N.J.R.E. 401).

Although a judge has the power to allow a defendant to access discovery outside of what is provided by these rules, the defendant "bears the burden of establishing need." <u>State ex rel. A.B.</u>, 219 N.J. 542, 555 (2014). That burden is measured by the "nature and extent of the intrusion" to the requested discovery target's rights. <u>Id.</u> at 557. Further, defendants are not to "transform the discovery process into an unfocused, haphazard search for evidence." <u>Hernandez</u>, 225 N.J. at 463 (quoting <u>D.R.H.</u>, 127 N.J. at 256); <u>see also</u> <u>State v. R.W.</u>, 104 N.J. 14, 28 (1986) (urging that "allowing a defendant to forage for evidence without a reasonable basis is not an ingredient of either due process or fundamental fairness in the administration of the criminal laws").

Under <u>Rule</u> 1:9-2, a judge may quash a subpoena if she finds that it is unreasonable or if compliance with it would be oppressive. The subpoena's

> subject . . . must be specified with reasonable certainty, and there must be a substantial showing that they contain evidence relevant and material to the issue. If the specification is so broad and indefinite as to be

15

> oppressive and in excess of the demandant's necessities, the subpoena is not sustainable.
>
> [State v. Cooper, 2 N.J. 540, 556 (1949).]

"The purpose of a subpoena duces tecum is to obtain the production of documents or other items that will aid in the development of testimony at trial. It is not appropriately employed as a discovery device in criminal proceedings." State v. Kaszubinski, 177 N.J. Super. 136, 141 (Law Div. 1980).

As the judge noted, defendant made a large and extensive request for documents, most of which the Morris County Bureau of Corrections (MCBC) turned over in a timely manner. As for the request for the MCBC's policies and procedures, the MCBC claimed that the request was "confidential, unreasonable, excessive and would jeopardize and undermine the safe and secure operation of the detention facility." In this case, the judge found, and we agree, that it was in the interest of the MCBC, its officers and staff, and its inmates to keep these requested documents confidential.[2] See Wakefield v. Pinchak, 289 N.J. Super. 566, 571 (App. Div. 1996) (noting that where a matter touches upon "personal

---

[2] Defendant briefly mentions that there was no discussion of an in-camera review. However, the judge addressed this argument, and our Supreme Court has declared that an in-camera inspection is not an automatic right, specifically in cases of protecting police activities. See Loigman v. Kimmelman, 102 N.J. 98, 109 (1986).

safety or institutional security and good order may be seen as having confidential qualities, <u>even when an element of proof on a charged offense"</u> (emphasis added)); <u>see also</u> <u>Jacobs v. Stephens</u>, 139 N.J. 212, 221-22 (1995) (holding that a prison rule prohibiting inmates from receiving copies of investigation reports is justified by security reasons). Additionally, we note that the MCBC complied with the request for the documents that it did not deem confidential.

As to defendant's request for his grievances, counsel admitted before the judge that the point of the request was for the number of grievances, not necessarily the contents of such. However, defendant now asserts that he needed the grievances to demonstrate that "Officer Corrente overreacted . . . because of the large amount of complaints that [defendant] filed[.]" Based on defendant's inconsistent reasoning behind his request, we can surmise that defendant did not originally have a clear purpose for requesting the grievances, but rather was hoping to discover something that would help him formulate an argument. <u>See</u> <u>Hernandez</u>, 225 N.J. at 463 (confirming that defendants are not to use the discovery process to "haphazard[ly] search for evidence").

Even if defendant demonstrated that the requested policies and grievances were relevant, the judge had the authority to exclude relevant evidence if its

A-0090-18T3

probative value was substantially outweighed by the risk of confusing or misleading the jury, unfair prejudice, or undue delay. N.J.R.E. 403. Here, the judge found, and we concur, that the jury would have been misled by testimony regarding defendant's grievances. Defendant's grievances were unsubstantiated, and the judge stressed that "if a partial and possibly misleading account of the contents of a report or a preceding investigation is elicited by a defendant, the State may properly bring before the jury the complete information." See State v. Knight, 63 N.J. 187, 193 (1973).

In considering the deferential standard of review, the judge properly quashed the subpoena. Defendant submitted an overly broad subpoena, the requested information was confidential, and—if admitted—the jury could have been unfairly misled or prejudiced by the information sought.

IV.

Defendant contends that the judge erred by admitting into evidence that he had previously threatened Officer Corrente. Specifically, that defendant told Officer Corrente "[m]eet me on the outside, I'm going to fuck you up" four months before the incident. The judge held that it was admissible under N.J.R.E. 404(b) to prove defendant's intent and motive.

18

Our "review of a trial judge's determination on the admissibility of 'other bad conduct' evidence is one of great deference." State v. Goodman, 415 N.J. Super. 210, 228 (App. Div. 2010) (quoting State v. Foglia, 415 N.J. Super. 106, 122 (App. Div. 2010)). Because "[t]he admission . . . of evidence at trial rests in the sound discretion of the trial [judge]," State v. Willis, 225 N.J. 85, 96 (2016), the trial judge's ruling should be disturbed "[o]nly where there is a 'clear error of judgment[.]'" State v. Marrero, 148 N.J. 469, 483 (1997) (quoting State v. DiFrisco, 137 N.J. 434, 496 (1994)).

"N.J.R.E. 404(b) generally precludes the admission of evidence pertaining to other crimes or wrongs, except to show 'proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident when such matters are relevant to a material issue of dispute.'" Goodman, 415 N.J. Super. at 229 (quoting N.J.R.E. 404(b)). "[W]hen motive or intent is at issue, we 'generally admit a wider range of evidence.'" State v. Jenkins, 178 N.J. 347, 365 (2004) (quoting State v. Covell, 157 N.J. 554, 565 (1999)). In State v. Cofield, 127 N.J. 328, 338 (1992), the Court articulated a four-part test to guide a trial judge's determination of whether to admit such evidence. The Cofield test requires that:

> 1. The evidence of the other crime must be admissible as relevant to a material issue;

19

2. It must be similar in kind and reasonably close in time to the offense charged;

3. The evidence of the other crime must be clear and convincing; and

4. The probative value of the evidence must not be outweighed by its apparent prejudice.

[Ibid. (citation omitted).]

Because the Cofield test assumes that other-crimes evidence is to be excluded, the burden is on the party seeking to introduce the evidence. Reddish, 181 N.J. at 608-09. The party seeking to admit such evidence must establish that the "probative value of the evidence is not outweighed by its apparent prejudice." Id. at 609. Because of this, the fourth prong of the Cofield test is typically "the most difficult to overcome." State v. Rose, 206 N.J. 141, 160 (2011). Thus, "[i]f other less prejudicial evidence may be presented to establish the same issue, the balance in the weighing process will tip in favor of exclusion." Id. at 161 (alteration in original) (quoting State v. Barden, 195 N.J. 375, 392 (2008)).

As to the first factor of the Cofield test, the evidence here is relevant, as it pertains to a material issue in dispute—whether defendant purposely or knowingly caused bodily injury to Officer Corrente. After defendant's previous

A-0090-18T3

threat to Officer Corrente, the officer notified his supervisor. Their relationship remained tense, with defendant frequently calling him an "asshole," being loud, and kicking his cell door. The threat is relevant as to defendant's motive and intent leading to the assault.

Although the judge did not find that the second prong of the Cofield test was fulfilled, she noted that the State was not required to prove this prong for the evidence to be admissible. State v. Williams, 190 N.J. 114, 131 (2007) (noting that the second prong may be eliminated where it "serves no beneficial purpose"); see also Barden, 195 N.J. at 389 (confirming that the second prong in Cofield does not apply when the evidence of other offenses is "relevant only to the defendant's state of mind").

As to the third prong of the Cofield test, the judge found both officers who testified at the 404(b) hearing to be credible. Particularly, the judge placed emphasis on Officer Corrente's statement that "defendant threatened him with harm in a way no other inmate had," which caused him to report the incident. The judge also relied on evidence submitted by defendant, "wherein defendant was said to have taken responsibility for the obscene threat hurled at [Officer] Corrente."

As to the fourth prong of the <u>Cofield</u> test, the balancing of the evidence's probative value outweighs any risk of undue prejudice. <u>Cofield</u>, 127 N.J. at 338. Although this is typically the hardest prong to satisfy, judges "have not frequently excluded highly prejudicial evidence[.]" <u>State v. Long</u>, 173 N.J. 138, 162 (2002). The analysis of this prong "requires a careful weighing of competing interests." <u>Barden</u>, 195 N.J. at 392. The judge rejected defendant's argument that the State merely sought to include this evidence to bolster Officer Corrente's testimony. The judge found that defendant's threat to "fuck up" Officer Corrente was highly probative in establishing that defendant attempted to cause or purposely, knowingly, or recklessly cause bodily injury to Officer Corrente. <u>See</u> <u>Covell</u>, 157 N.J. at 565 (noting that our courts "generally admit a wider range of evidence when the motive or intent of the accused is material"). This evidence could lead the jury to find that defendant had a propensity to fulfill his threat against the officer. Further, it was clear that defendant was already incarcerated at the time of the offense, and therefore it was not prejudicial that this other-crimes evidence demonstrated that defendant had been in jail four months before the assault.

Additionally, contrary to defendant's assertion, the judge indeed gave a sufficient limiting instruction as follows:

22

> [O]ur Rules [of Evidence] do permit evidence of other crimes, wrongs, or acts when the evidence is used for certain specific narrow purposes. In this case, the evidence that [defendant] threatened to cause physical harm to Officer Corrente, if you choose to believe it, has been introduced only for the specific narrow purpose to establish [defendant's] state of mind at the time of the incident and his motive to commit the crimes alleged.

The judge informed the jury that the evidence was to be disregarded if it was not in consideration of either state of mind or motive. She concluded her limiting instruction by reminding the jury that it was not to "consider [the evidence] for any other purpose and [it] may not find [defendant] guilty now simply because the State has offered evidence that he committed other crimes, wrongs, or acts." Defendant's argument that the judge failed to give a limiting instruction is baseless.

## V.

As for his sentence, we agree with the judge that defendant was eligible for a discretionary prison term under N.J.S.A. 2C:44-3. A judge may, upon application of the prosecuting attorney—like here—sentence certain defendants to an extended term of imprisonment if:

> The defendant has been convicted of a crime of the first, second or third degree and is a persistent offender. A persistent offender is a person who at the time of the commission of the crime is [twenty-one] years of age

23

or over, who has been previously convicted on at least two separate occasions of two crimes, committed at different times, when he was at least [eighteen] years of age, if the latest in time of these crimes or the date of the defendant's last release from confinement, whichever is later, is within [ten] years of the date of the crime for which the defendant is being sentenced.

[N.J.S.A. 2C:44-3(a).]

In 2005, defendant received a prison sentence of seven years for second-degree sexual assault. Even if defendant should not be subject to a mandatory extended term, as he argues on appeal, the judge asserted that she would have used her power to sentence him to a discretionary extended term. The judge concluded that defendant would be eligible for a discretionary extended term based on persistent offender status. The judge weighed, and defendant does not contest, the appropriate aggravating and mitigating factors. See State v. Pierce, 188 N.J. 155, 170 (2006). Appellate review of a sentence is typically guided by the abuse of discretion standard. See State v. Roth, 95 N.J. 334, 364-65 (1984). Thus, we need not reach defendant's remaining sentencing arguments.

To the extent we have not addressed defendant's remaining arguments, we conclude that they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0090-18T3